The National Carbon Co. *v.* George.

(Decided March 19, 1928.)

*Messrs. Dustin, McKeehan, Merrick, Arter & Stewart,* for plaintiff in error.
*Messrs. Spring & Sayre,* for defendant in error.

Vickery, J. This case comes in this court on a petition in error to the common pleas court of Cuyahoga county. In the court below Pete George brought an action against the National Carbon Company for damages which he claims he suffered by reason of a collision on Madison avenue. In the trial a judgment was recovered against the National Carbon Company, a motion for a new trial was made and overruled, and judgment entered on the verdict. Error is now prosecuted here.

Several errors are alleged why this cause should be reversed, and a brief statement of how the question arose will be necessary.

It seems that the National Carbon Company is located on the southwest corner of West 117th street

and Madison avenue, in Lakewood, just across from the Cleveland line; that it consists of a large manufacturing plant employing many people; that there are two entrances off Madison avenue into the grounds of the carbon company; that Madison avenue runs east and west, and one gate is for the delivery of material and supplies and the taking away of manufactured material, which, I believe, is west of the entrance out of which this accident grew. Somewhere between the entrance alluded to and West 117th street is an entrance to the grounds of the carbon company, about 8 feet wide, and the carbon company's plant is inclosed with a high fence, and a watchman is stationed at this gate, for the purpose of admitting and letting out those who have the right to use this gate. Certain of the employees who drive cars to their work use this gate as an entrance to and exit from the grounds where they park their cars. This is also an entrance for a certain class of business that is done in the carbon works.

On the day in question a watchman was stationed at the gate, and when cars were on the way out he would make a signal for them to go, and when cars were coming in, he would signal them to go in, the purpose of this apparently being to prevent a jam at the gateway, and also to protect pedestrians on the sidewalk from coming in contact with the cars going out or coming into the plant. Immediately north of the gateway there was a sidewalk 6 feet wide, sloping down to the pavement on the street. Madison avenue, the street on which this gateway opens, is a wide street, having two lines of street car tracks in the center thereof, and on each side, between the outer rail and the curb is a distance of

12½ feet. It was the custom of the gateman to stand at the gate and open it, or to keep it open and let the persons come in and go out who so desired.

On this particular day Miss Rose Clark, an employee in the office of the carbon company, had driven to work in a Ford coupe, and during luncheon hour was taking her car out to go to luncheon, which would take her westward on Madison avenue, and, wanting to go out, she drove up within 3 feet of the fence line of the gate, when the watchman held up his hand. It was the noon hour, and pedestrians were going by, and for the purpose of protecting pedestrians the watchman held up his hand to stop, and she stopped, and according to her own testimony she stopped her engine from running 3 feet inside the fence line, and stood still for three minutes. Now when the watchman held his hand for her to go, he stopped a Mr. Burns, a pedestrian going east on the sidewalk, who was about 10 feet away, and Miss Clark started her car, and from her own testimony she went across this sidewalk, across the east-bound traffic space and was ready to go into the railroad tracks when she was struck by the car of defendant in error. Whether she or the car was injured is immaterial in this lawsuit. Suffice it to say that from her own testimony she did not look to the west at any time, although she was going across the east-bound traffic space and was going to turn west on Madison avenue. The automobile driven by the plaintiff below crashed into Miss Clark's car with such force that it ran up over the curb, and smashed into a telegraph pole on the side of the road. Plaintiff was injured and his car was damaged.

This action was brought by the plaintiff, and he

did not make Miss Rose Clark a party defendant, but sued the carbon company, on the theory that the carbon company was negligent, in that its gateman did not stop Miss Clark from going on the street when this other car was coming.

At the conclusion of the testimony of the plaintiff, the defendant made a motion for a directed verdict, on the theory that there was no negligence shown on the part of the carbon company. This motion was overruled. At the close of all the testimony this motion was renewed, and it was again overruled. Because of the overruling of these motions, and because the verdict is against the weight of the evidence and contrary to law, this error proceeding is prosecuted here.

The plaintiff below, defendant in error here, testified that he was driving within 2 or 3 feet of the curb, and his theory of the lawsuit was that, that being so, the gateman in letting Miss Clark "shoot out," as defendant in error expresses it in his brief, violated his duty, and his superior, the company, is responsible.

In the first place there was not any "shooting out" of Miss Clark's car. She stopped within 3 feet of the fence line. Whether she could see up the street or not does not make much difference, because, according to her own testimony, she did not look at any time towards the west. Her car must have been going very slowly, and if she had looked to the west, she could have seen this car coming, and could have stopped even on the incline that was there, if the brakes were in the proper condition, and there is no evidence but that they were. Mr. Burns, the pedestrian who was halted by the gateman, in his evidence

says that when within 10 feet he was motioned by the gateman to stop, and the gateman then let Miss Clark out; that he then walked the 10 feet up to the entrance to the plant and waited until Miss Clark's car got past the sidewalk, and, then, looking west, saw plaintiff's car in the railroad tracks 30 or 40 feet west. Burns was a disinterested witness, and according to him the accident happened on the street car tracks. The force of the impact clearly shows that the defendant in error was driving his car at a greater speed than 10 or 15 miles an hour. The evidence shows he was a restaurant keeper and had restaurants west and east from where the accident occurred, and that he was on his way from one to the other during the noon hour, for the purpose of helping out the eastward restaurant, and probably was in a hurry. However that might be, the evidence shows that this collision took place on the street car tracks. The testimony of Mr. Burns shows that the plaintiff was driving his car on the street car tracks and the distance that he went after the accident shows that he must have been driving at a high rate of speed.

Now all this raises an interesting and important question, and that is: How far are corporations, who employ gatemen, liable for injury to one driving a vehicle on the highway who comes in contact with a vehicle that has driven out of their inclosure?

There was no duty imposed upon the watchman to watch vehicular traffic upon the street. His duty was to watch the gate, and let cars in, and let cars out, and to keep them from running over pedestrians on the sidewalk and to prevent a jam or collision of cars in the narrow gateway. In no sense was he a

traffic policeman; nor had he any duties on the street. It is true he said if he saw a car turning into the carbon plant from the street, and the signal had been given for one to come out, he would hold his hand out and stop the one on the street until the other car had left the grounds.

Now, in this case, if the testimony of Miss Clark and Mr. Burns is to be believed, this accident, unless the plaintiff himself was guilty of negligence, was due solely to the negligence of Miss Rose Clark, who was not made a party defendant in this action, but was made the plaintiff's witness, in order to make liable the carbon company. Just why her deposition was taken I do not know, but her testimony is in the record.

It cannot be possible that a garage company, where its customers drive over the sidewalk, and the company has a watchman to permit the ingress and egress of cars, and to save pedestrians from being run down, like the Ninth Street Garage, for instance, can be responsible for the negligence and carelessness of one who drives out of the garage, after he has passed the sidewalk and entered upon the street. Is it possible that a driver of a vehicle who goes out of a garage or an inclosure like the carbon company's can neglect all the duties of a driver on a thoroughfare and not be held responsible for the accident which he or she occasions by not looking in all directions on a street and by so doing make the keeper of the inclosure responsible for injuries occasioned by him or her? If Miss Clark had brought a suit in this case against the defendant in error, the plaintiff below, she, from her own testimony, could not have recovered. She was guilty of

negligence as a matter of law in not looking west, although she intended to go west, and had to go across the space on the south side of the street which was given up to east-bound traffic, and, further, had to cross the railroad tracks and get on to the space given up to west-bound traffic, and yet, from her own testimony, she looked east and not west, and did not see this man coming at all at any time.

We think, after reviewing this whole case, that the court erred in not directing a verdict, because there is no duty shown in this case that the carbon company owed to the driver of this car on Madison avenue, and the duties of the watchman were solely to watch the ingress and egress through the gates, and to protect pedestrians upon the sidewalk, but this did not authorize a person driving out of that driveway to close her eyes and ears and neglect all the precautions of one who drives upon a public thoroughfare.

We think, therefore, that the court erred as a matter of law in not directing a verdict, because, as just stated, there is not a particle of evidence to show violation of any duty that the carbon company owed to the plaintiff below. The verdict likewise is manifestly against the weight of evidence. The evidence conclusively shows in this case that unless the plaintiff himself was guilty of negligence, the proximate cause and sole cause of the accident was the manner in which Miss Clark drove out of the carbon company's plant, and across the street, without taking any safeguards to prevent the accident.

We think, therefore, that the case must be reversed on the ground that the verdict is contrary to law, because there is no duty shown that was violated, and

because the verdict is contrary to the weight of the evidence.

The judgment is reversed, and final judgment entered for plaintiff in error.

*Judgment reversed and judgment for plaintiff in error.*

SULLIVAN, P. J., and LEVINE, J., concur.